UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANNETTE DANT,

        Plaintiff,

v.

RECARO NORTH AMERICA INC.,
a Michigan Corporation,
CAROL M. BOCK, and MELISA MANN
Jointly and severally,

        Defendants.

Case No.: 12-cv-

HON.

_____/
PITT McGEHEE PALMER RIVERS & GOLDEN, P.C.
By: Robert W. Palmer P31704
Attorneys for Plaintiff
117 W. Fourth Street, Suite 200
Royal Oak, Michigan 48067
(248) 398-9800
_____/

## COMPLAINT AND JURY DEMAND

**NOW COMES** Plaintiff, **ANNETTE DANT**, by and through her attorneys, **PITT McGEHEE PALMER RIVERS & GOLDEN, P.C.**, complaining against Defendants as follows:

## JURISDICTION, VENUE AND PARTIES

1. Plaintiff Annette Dant (hereinafter "Plaintiff"), at all times material hereto was a resident of the County of Oakland, State of Michigan.

2. Defendant RECARO North American, Inc. (hereinafter "RECARO"), is a Michigan corporation and at all times material hereto was engaged in the business of seating manufacture.

1

3. At all times material hereto, RECARO was a Michigan corporation and maintained its corporate office and principle place of business in the City of Auburn Hills, County of Oakland, State of Michigan.

4. At all times material hereto, Defendant Carol M. Bock (hereinafter "Defendant Bock") was the Human Resources Manager of RECARO.

5. At all times material hereto, Defendant Melisa Mann (hereinafter "Defendant Mann") was employed as a Quality Manager and had supervisory authority of Plaintiff.

6. The events giving rise to this action occurred in Oakland County, Michigan.

7. Plaintiff was an employee of RECARO from September 29, 2004 through her termination on September 17, 2010.

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 under the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. §2601 et seq. and the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §12101 et seq.

9. The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 29 U.S.C. §1367.

10. Venue is proper under 28 U.S.C. § 1391(b) (c).

## COMMON ALLEGATIONS

11. On or about September 29, 2003, Plaintiff began her employment with RECARO.

12. From approximately February 6, 2005 until September 17, 2010, Plaintiff was a Quality Technician responsible for monitoring and reporting quality control issues and performing product audits.

13. In approximately January 2009, Plaintiff notified Defendant Mann that she would need time off work for a medically necessary bladder sling and hysterectomy surgery (hereinafter "surgery"), but that she did not yet know the date of the surgery.

14. In approximately October 2009, Plaintiff again notified Defendant Mann that she needed the surgery, and that she would require six weeks off work for recovery. Plaintiff told Defendant Mann she would let Defendant Mann know the date of the surgery as soon as it was scheduled.

15. In approximately November 2009, Plaintiff again notified Defendant Mann that she needed the surgery and six weeks off work for recovery.

16. In approximately November 2009, Plaintiff notified Defendant Bock that she needed the surgery and would require six weeks off work for recovery.

17. In approximately December 2009, Plaintiff again notified Defendant Bock that she needed the surgery and six weeks off for recovery.

18. In approximately February 2010, Plaintiff spoke with Defendant Mann about the surgery and six week recovery period. Defendant Mann questioned Plaintiff as to why she needed six weeks off when another RECARO employee required a shorter recovery period.

19. In approximately May 2010, Plaintiff notified Defendant Mann that her doctor recommended back therapy in September 2009, and that she had not started therapy yet but that she intended to do so.

20. In approximately May 2010, Plaintiff notified Defendant Mann that she had not been sleeping well since February 2010, and had been prescribed sleeping pills.

21. In approximately May 2010, Plaintiff told Defendant Mann that she was still not sleeping well despite the sleeping pills.

22. On or about May 14, 2010, Plaintiff notified Defendant Mann that she scheduled an appointment with her Obstetrician/ Gynecologist to assess the severity of her condition.

23. On or about May 17, 2010, Plaintiff notified Defendant Mann that her doctor wanted to proceed with the surgery and she would need six weeks off for recovery.

24. Defendant Mann requested that Plaintiff delay scheduling her surgery until a time more convenient for Defendant Mann and RECARO.

25. Due in part to Plaintiff's heavy work load and Defendant Mann's request, Plaintiff delayed scheduling her surgery.

26. On or about July 30, 2010, Plaintiff's surgery was scheduled for August 16, 26, 2010.

27. At Defendant Mann's request after audit, Plaintiff rescheduled the surgery for September 20, 2010 to accommodate a scheduled work increase.

28. On or about July 30, 2010, Plaintiff notified Defendant Mann and Defendant Bock that her surgery was scheduled for September 20, 2010.

29. On or about August 3, 2010, Plaintiff notified Defendant Bock that she was under increased stress because of her condition and her heavy work load.

30. Approximately one and a half weeks prior to August 9, 2010, Plaintiff began hemorrhaging and informed Defendant Mann of the situation.

31. August 9, 2010 was the last day Plaintiff attended work.

32.     On Monday, August 9, 2010, Plaintiff notified Defendant Mann and Defendant Bock that she was hemorrhaging and her Obstetrician/ Gynecologist recommended that she take the next day (Tuesday, August 10, 2010) off and come in for an office visit on Wednesday, August 11, 2010.

33.     On August 9, 2010, Defendant Bock told Plaintiff she may want to consider using FMLA for her time off.

34.     On or about Wednesday, August 11, 2010, Plaintiff called Defendant Mann's cell phone and left a message notifying Defendant Mann that her Obstetrician/ Gynecologist recommended that she take the rest of the week off work.  Plaintiff also e-mailed Defendant Mann to confirm that Defendant Mann received the message.

35.     On or about August 12, 2010, Plaintiff received a message from Defendant Mann that Plaintiff would need a doctor's note to return to work.

36.     On or about Friday, August 13, 2010, Plaintiff spoke to Defendant Bock and told her that her Obstetrician/ Gynecologist had performed a biopsy to screen for cancer. Plaintiff informed Defendant Bock that her doctor recommended that she take the week of August 16- 20 off work.  Defendant Bock told Plaintiff it was an inconvenience for Plaintiff to take time off.

37.     On August 16, 2010, Defendant Bock requested that Plaintiff's doctor furnish Defendant Bock with "some sort of explanation of [Plaintiff's] medical situation and the reason that [Plaintiff is] unable to return to work." Defendant Bock demanded that Plaintiff furnish this documentation no later than the next afternoon, August 17, 2010.

5

38. On August 17, 2010, Plaintiff e-mailed Defendant Bock notes from three doctors verifying that Plaintiff needed time off for health reasons.

39. On or about August 18, 2010, Plaintiff received a voice message from Defendant Bock advising Plaintiff that she should complete FMLA paperwork.

40. On or about August 18, 2010, Plaintiff requested that Defendant Bock fax FMLA paperwork to Dr. Tim O'Neill, M.D. Dr. O'Neill did not receive the fax.

41. On or about August 19, 2010, Defendant Bock told Plaintiff she had to mail the FMLA paperwork by certified mail.

42. On or about August 21, 2010, Plaintiff received the FMLA paperwork via certified mail. Plaintiff promptly gave this paperwork to Dr. O'Neill and requested that he return it to Defendant Bock.

43. On or about August 26, 2010, Dr. O'Neill completed the FMLA medical certification and faxed the FMLA paperwork to Defendant Bock.

44. This FMLA certification notified Defendant Bock that Dr. O'Neill considered it medically necessary for Plaintiff to take FMLA leave from August 10, 2010 through September 19, 2010. It also notified Defendant Bock that Plaintiff planned to return to work in November 2010 after her recovery, which would be covered by short term disability insurance.

45. On August 26, 2010, Defendant Bock confirmed via e-mail that she received Dr. O'Neill's completed medical certification, yet requested additional medical certifications from Plaintiff's psychiatrist and Obstetrician/ Gynecologist. Defendant Bock attached to the e-mail forms for the doctors to complete.

46. On or about September 1, 2010, Plaintiff notified Defendant Bock that she could not print the attached forms.

47. On or about September 8, 2010, Plaintiff requested that Defendant Bock fax the FMLA forms to one of her doctors. Defendant Bock responded that Plaintiff needed to pick the forms up in person.

48. On or about September 15, 2010, Defendant Bock e-mailed Plaintiff to inform her that "[t]here is a time limit for submission of the FMLA Doctor's Certifications and you are well passed [sic] that deadline. I am willing to delay rejecting your request if you still intend to get the Certifications. If I don't hear from you by tomorrow, I will assume that you are no longer interested in FMLA."

49. Due to her serious medical condition, Plaintiff was unaware of the September 15, 2010 e-mail until after her surgery.

50. On or about September 17, 2010, Defendant Bock e-mailed Plaintiff to inform her of her termination.

51. Due to her serious medical condition, Plaintiff was unaware of the September 17, 2010 e-mail until after her surgery.

52. On or about September 17, 2010, Plaintiff's hospital confirmed that her medical insurance was valid for her upcoming surgery.

53. On September 20, 2010, Plaintiff underwent surgery as scheduled.

54. On September 20, 2010, while still recovering in the hospital, Plaintiff was told by a hospital employee that her insurance was no longer valid.

55. On September 26, 2010, Plaintiff received a letter signed by Defendant Bock notifying Plaintiff that she was terminated as of September 17, 2010, and that her insurance benefits were discontinued as of September 15, 2010.

56. RECARO terminated Plaintiff because exercised her FMLA rights and because it regarded her as having a disability.

## COUNT I
## RETALIATION AND DISCRIMINATION
## IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

57. Plaintiff incorporates by reference all of the above allegations as though stated fully herein.

58. At all times relevant hereto, Plaintiff was an employee and Defendant a covered employer within the meaning of the FMLA, 29 U.S.C. § 2601 et seq.

59. During her FMLA leave beginning August 10, 2010, Plaintiff had a qualifying "serious health condition" within the meaning of the FMLA.

60. Plaintiff engaged in FMLA-protected activity when she exercised her right to take FMLA leave in 2010.

61. Defendant was aware that Plaintiff was taking FMLA leave in 2010.

62. Plaintiff suffered an adverse employment action by being terminated from her position at RECARO on account of her use of FMLA leave.

63. Under the FMLA and applicable regulations, "an employer is prohibited from discriminating against employees ... who have used FMLA leave" and an employer "cannot use the taking of FMLA leave as a negative factor in employment actions [.]" 29 C.F.R. §824.220(c).

64. Defendant used Plaintiff's FMLA leave as a negative factor in its decision to terminate Plaintiff.

65. Plaintiff's exercise of her rights under FMLA was a motivating factor in Defendant's decision to terminate Plaintiff.

66. Plaintiff's use of FMLA time was a factor that made a difference in Defendant's decision to terminate Plaintiff.

67. By its actions above, and through its agents, Defendant willfully discriminated and retaliated against Plaintiff for having exercised her FMLA-protected right to take medical leave, in violation of the FMLA, 29 U.S.C. §2615(a)(1)-(2). Defendant's actions were willful and in reckless disregard of Plaintiff's rights and its obligations under the FMLA.

68. As a direct and proximate result of Defendant's willful violation of the FMLA, Plaintiff has and will continue to suffer loss of wages, fringe benefits, status, seniority and other advantages of employment.

69. As a result of Defendants' wrong actions, Plaintiff suffered physical and emotional pain and suffering.

**WHEREFORE,** Plaintiff requests that the Court enter judgment in favor of Plaintiff and enter an order awarding Plaintiff the following relief:

A. Compensatory economic and non-economic damages, including lost wages, salary, employment benefits, and other compensation denied or lost to Plaintiff as a result of Defendant's unlawful actions, as well as compensation for physical and mental pain and suffering in an amount to be determined at trial;

B.  Pre-judgment interest, costs and attorney fees as provided for under the FMLA;

C.  Liquidated damages in accordance with the FMLA;

D.  Front pay damages in accordance with the FMLA; and

E.  All other legal or equitable relief that this Court deems just and appropriate.

### COUNT II
### DISABILITY DISCRIMINATION IN VIOLATION OF
### THE MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT

70. Plaintiff incorporates by reference all of the above allegations as though stated fully herein.

71. At all times relevant hereto, Plaintiff was an employee and RECARO an employer covered by the Michigan Persons with Disabilities Civil Rights Act ("PDCRA"), MCL §37.1201, et seq.

72. At all times relevant hereto, Plaintiff was a qualified individual with a disability within the meaning of the PDCRA, MCL §37.1103(d) in that she was regarded by RECARO as having a determinable physical or mental characteristic that substantially limited her in one or more major life activities.

73. At the time that Plaintiff was terminated, RECARO regarded Plaintiff's condition as being unrelated to her ability to perform the duties of her position, or unrelated to her qualifications for employment.

74. Under the PDCRA, RECARO had a duty not to discriminate against Plaintiff because of a perceived disability.

75. Notwithstanding the duties as set forth above, and in willful violation thereof, RECARO discriminated against Plaintiff with respect to her terms and conditions of employment, and terminated Plaintiff, because of her perceived disability.

76. As a direct and proximate result of RECARO's intentional disability discrimination, Plaintiff has suffered and will continue to suffer lost wages, fringe benefits, and other economic advantages of employment, as well as mental anguish, humiliation, embarrassment, and emotional distress resulting from the discriminatory conduct of the RECARO.

77. As a direct and proximate result of the intentional disability discrimination, Plaintiff suffered physical and emotional pain and suffering.

**WHEREFORE,** Plaintiff requests that the Court enter judgment in favor of Plaintiff and enter an order awarding Plaintiff the following relief:

A. Compensatory economic and non-economic damages including lost wages, salary, employment benefits, and other compensation denied or lost to Plaintiff as a result of Defendant's unlawful actions, as well as compensation for physical and mental pain and suffering in an amount to be determined at trial;

B. Front pay damages;

C. Pre-judgment interest;

D. Attorneys' fees and costs; and

E. Other legal and equitable relief as this Court deems just and

appropriate.

          Respectfully submitted,

          PITT MCGEHEE PALMER RIVERS & GOLDEN, P.C.


          By: s/Robert W. Palmer
          Robert W. Palmer P31704
          Attorneys for Plaintiff
          117 W. Fourth Street, Suite 200
          Royal Oak, Michigan 48067
          (248) 398-9800
          rpalmer@pittlawpc.com


Dated: June 4, 2012

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANNETTE DANT,

       Plaintiff,

v.

RECARO NORTH AMERICA INC.,
a Michigan Corporation, KAI WEISSKOPF,
CAROL M. BOCK, and MELISA MANN
Jointly and severally,

       Defendants.
_____/

Case No.: 12-cv-

HON.

PITT McGEHEE PALMER RIVERS & GOLDEN, P.C.
By: Robert W. Palmer P31704
Attorneys for Plaintiff
117 W. Fourth Street, Suite 200
Royal Oak, Michigan 48067
(248) 398-9800
_____/

## JURY DEMAND

       Plaintiff, **ANNETTE DANT** herein demands a trial by jury of all issues to the within causes of action.

       Respectfully submitted,

       PITT McGEHEE PALMER RIVERS & GOLDEN, P.C.

       By: s/Robert W. Palmer
       Robert W. Palmer P31704
       Attorneys for Plaintiff
       117 W. Fourth Street, Suite 200
       Royal Oak, Michigan 48067
       (248) 398-9800
       rpalmer@pittlawpc.com

Date: June 4, 2012